**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ROCK HILL DIVISION**

| | | |
|---|---|---|
| MorningStar Fellowship Church, | ) | |
| | ) | Civil Action No.: 0:18-cv-03077-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| York County South Carolina, James E. | ) | |
| Baker, and Houston "Buddy" Motz, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Defendants York County South Carolina ("County"), James E. Baker ("Baker"), and Houston "Buddy" Motz ("Motz") (collectively, "Defendants") move this court for dismissal of Plaintiff MorningStar Fellowship Church's ("MorningStar") Complaint (ECF No. 1). (ECF No. 15.) Subsequent to Defendant's filing of its Motion to Dismiss, MorningStar moved to amend its Complaint. (ECF No. 28.) The court **GRANTS IN PART and DENIES IN PART** Defendants' Motion to Dismiss and **GRANTS** MorningStar's Motion to Amend.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

MorningStar is "an evangelical church operating primarily in Fort Mill, York County, South Carolina." (ECF No. 1 at 1.) It describes itself as a "large . . . international ministry that reaches virtually every nation," including by publishing books that have been bestsellers and translated into over fifty (50) languages and hosting an internet television network and Christian conferences on its properties in Fort Mill. (*Id.* at 3 ¶¶ 12–14.) Those properties were once owned and operated by the large evangelical ministry known as PTL, formerly headed by Jim and Tammy Bakker. (*Id.* at 3 ¶ 15.) MorningStar purchased the properties in 2004. (*Id.* at 4 ¶ 19.) One of these properties, and the subject of this lawsuit, is the Heritage Tower ("Tower"), a twenty-one

story, partially-completed building consisting of five hundred (500) plus residential rooms.  (*Id.* at 6 ¶ 25.)  In 1989, Jim Bakker was convicted for overselling memberships to the Tower.  (*Id.* at 6 ¶ 28.)  *See also United States v. Bakker*, 925 F.2d 728 (4th Cir. 1991).  Plaintiffs allege the Bakker case "is relevant because [MorningStar] became the subject of anti-religious and anti-Christian comments by County officials, with at least one public official, namely . . . Motz, attempting to falsely suggest that PTL and MorningStar are one in the same."  (*Id.* at 7 ¶ 33.)

Since purchasing the PTL properties in 2004, MorningStar renovated one building at a time, obtaining construction permits as needed.  (*Id.* at 21 ¶ 81.)  When MorningStar was ready to begin renovation of the Tower, the County "mandated a 'Development Agreement,'" pursuant to the South Carolina Local Government Development Agreement Act ("SCLGDAA").[1]  (*Id.* at 21 ¶ 82; 22 ¶ 87.)   On November 5, 2007, the County passed two ordinances regarding the Development Agreement with MorningStar, and on January 13, 2008, MorningStar and the County entered into a Development Agreement ("Agreement") with a five-year term.  (*Id.* at 22 ¶ 86; 23 ¶ 93.)  The Agreement provided for demolition of the Tower if certain conditions were not met by MorningStar:

> [w]ithin 180 days of County approval of the commercial site plan for the Property, should [MorningStar] or its contractor be unable to obtain bid, performance and payment bonds from an A+ Best rated insurer or letters of credit from a national bank or substantial equivalent acceptable to County, then this Development Agreement shall be deemed null and void.  At such time, the Tower shall be demolished, with all costs for its demolition borne by [MorningStar].

(ECF No. 1-2 at 5.)

---

[1] Under the SCLGDAA, "[a] local government may establish procedures and requirements, as provided in this chapter, to consider and enter into development agreements with developers.  A development agreement must be approved by the governing body of a county or municipality by the adoption of an ordinance."  S.C. Code Ann. § 6-31-30 (West 2019).

On March 5, 2010, the County "notified MorningStar that it was 'in default'" of the Agreement "because MorningStar, supposedly, had not provided the [C]ounty with [the required] performance and payment bonds." (ECF No. 1 at 40 ¶ 168.) MorningStar responded to the notice of default by letter to the County on March 9, 2010. (*Id.* at 40 ¶ 170.) MorningStar alleges that under the Agreement, the County was required to provide MorningStar with "formal notification in writing . . . of approval of the site development plan, which was the prerequisite that would trigger the bonding process, under a 180-day time frame from the formal notification of approval." (*Id.* at 42 ¶ 176.) MorningStar alleges the County never delivered any such notification to MorningStar. (*Id.*) Instead, according to MorningStar, "the [C]ounty answered [MorningStar]'s inquiry about the status of the Site Plan approval [by informing MorningStar] the [C]ounty was about to issue the default notice." (*Id.* at 41 ¶ 175.) MorningStar attempted to "work out any misunderstandings" with the County according to "provisions . . . in the . . . Agreement for working out such misunderstandings," but the County "continued to maintain [MorningStar] was in default." (*Id.* at 42 ¶ 177.) MorningStar believes

> [the] County did everything in its power to conceal the site plan, to conceal the approval process, to avoid clarification on the approval by refusing to respond to notices and information requests, delivered by certified mail, from MorningStar, all in an attempt to achieve their true intention of invoking an unconstitutional demolition clause to destroy sacred church property central to MorningStar's worship.

(*Id.* at 42 ¶ 178.)

For the next eighteen (18) months after the County issued the default notice, the parties attempted to mediate. (*Id.* at 42 ¶ 179.) MorningStar maintained it had not received notice of site approval, as required by the Agreement, while the County maintained "it had given notice when it supposedly communicated with private engineers in Charlotte, North Carolina[,] who [had] been working on the project on behalf of MorningStar." (*Id.* at 43 ¶¶ 180–83.) MorningStar alleges

this was in "direct violation of how official notices were to be given personally to MorningStar President and Pastor Rick Joyner Joyner by Certified Mail."[2]  (*Id.* at 12 ¶ 58; 17 ¶ 68; 43 ¶ 184.) MorningStar asserts that by issuing the default, "the [C]ounty effectively prohibited MorningStar from being able to secure any bonding or financing of the Tower project."  (*Id.* at 44 ¶ 186.)  This in turn left MorningStar unable to remedy the default because "no prudent financial institution would issue a bond on a project already in 'default' by a municipality."  (*Id.* at 44 ¶ 187.)  The default caused MorningStar "to suffer serious financial losses from the County's arbitrary 'default' declaration, including losses of engineering funds and other reconstruction expenses, as well as make all of its other financial needs nearly impossible."  (*Id.* at 44 ¶ 188.)  Still, MorningStar and two County Commissioners (representing the County) were able to reach an agreement during mediation.  (*Id.* at 45 ¶ 189.)  However, the York County Council ("Council") unanimously rejected the settlement, including the two Commissioners who had negotiated the settlement.  (*Id.* at 45 ¶ 190.)

On January 24, 2013, MorningStar sued the County in the York County Court of Common Pleas, seeking declaratory judgment regarding "the County's apparently arbitrary actions under the . . . Agreement, by its use of a so-called 'default' mechanism to actively prevent MorningStar from getting bonding that was needed to complete [its] obligations under the [A]greement."  (*Id.* at 47 ¶¶ 198–99.)  The County counterclaimed, seeking destruction of the Tower pursuant to the Agreement's demolition clause.  (*Id.* at 48 ¶¶ 200–01.)  The County filed its counterclaim on March 25, 2013, "more than five years after execution of the . . . Agreement[] and after any authority that the County may have had under the . . . Agreement[] to bring about destruction of the Tower, had

---

[2] Under the Agreement, "[a]ll notices, certificates or other communications hereunder shall be sufficiently given and shall be deemed given when mailed by certified or registered mail, postage prepaid, addressed as follows . . . ."  (ECF No. 1-2 at 17.)

already expired." (*Id.* at 50 ¶ 210.) During discovery, "MorningStar found shocking evidence, which showed the County's true intentions with regard to the church, revealing the County's unconstitutional discriminatory attitude against [MorningStar] in its exercise of religious activities." (*Id.* at 51 ¶ 213.) Specifically, MorningStar discovered two emails it describes as "slanderous" and "defamatory." (*Id.* at 51 ¶¶ 214–15.) The first, sent by Defendant Motz, Chairman of the Council, on January 22, 2010, states,

> Thanks Jim. I see them as being in the same mode as the old PTL, and just as scheming. They are only out to fleece the investors of the units and bilk them for every dime they can get. The [C]ounty has delayed this for too long and I see no reason for us to allow them to continue further. It would not be accepted for other businesses and it should not be allowed for them.

(*Id.* at 51 ¶ 215.) (*See also* ECF No. 1-3 at 1.) Motz sent the email to ten other County officials including County Commissioners, Assistant County Managers, the Clerk to the Council, the County Attorney, a Council member, Executive Assistants to the County Manager, and the Director of the York County Planning and Development Services Department. (*Id.* at 55 ¶¶ 229, 231–39.) MorningStar asserts that Defendant Motz's "email sets out a clear example of anti-Christian discrimination, and unleashes a shocking tirade of petty vindictiveness and an all-out assault on religious freedom that the First Amendment sets out to protect Americans against, especially from government officials." (*Id.* at 54 ¶ 225.)

The second email, sent about twenty (20) minutes before the email from Motz, was sent by Defendant Baker. (*Id.* at 57 ¶ 241.) (*See also* ECF No. 1-3 at 1–2.) Baker wrote that he "believe[d] the [C]ouncil should take a strong stance and give notice of default to MorningStar if they cannot provide the financial assurances that were promised in the . . . Agreement that they signed on April 28, 2008." (*Id.* at 57 ¶ 243.) Baker's email was sent to three Council members, including the Vice

Chairman, and several of the same recipients of Motz's email. (*Id.* at 63 ¶¶ 270–75; 64 ¶ 276.) MorningStar alleges that

> [t]he vindictive emails, and the policy that followed those emails, and the tone that was set by the wording of those emails, were designed to orchestrate, and carry out a [C]ounty policy against [MorningStar] and to prevent and obstruct the church and its members from carrying out their freedom of worship as they see fit, a freedom that is protected by the First Amendment of the United States Constitution.

(*Id.* at 65 ¶ 282.) MorningStar further alleges that the County's constitutional violations "are ongoing and continuous" because the County "continues to take away and to prevent MorningStar from engaging in its constitutionally-protected worship under the First Amendment . . .[,] the act of completing the Tower, which MorningStar considers an act of worship to God." (*Id.* at 71 ¶¶ 303–04.)

Additionally, MorningStar alleges the County has entered into only three development agreements since the passage of the SCLGDAA. (*Id.* at 72 ¶ 306.) Since MorningStar is the only religious organization with which the County has a development agreement, MorningStar believes the County singled out MorningStar by requiring that it enter into a development agreement. (*Id.* at 72 ¶ 308.) According to MorningStar, its Agreement with the County "is the only development agreement that [the County] has ever entered into in which it required any private citizen or entity to destroy property, in the event of non-performance." (*Id.* at 73 ¶ 312.) Thus, MorningStar alleges that "as an act of individually-targeted discrimination, the County has placed more stringent requirements against MorningStar, by forcing it into a[n] . . . Agreement which would lead to the destruction of its property, than it has placed on any other person or organization in the County, including private real estate developers." (*Id.* at 72 ¶ 309.)

In sum, MorningStar alleges that

> [t]he county's disparate use of its three development agreements, in favoring the two developers but, in the words of the former County Manager, taking a "strong

stance" against [MorningStar], by seeking destruction of a sacred Tower, not only violates [MorningStar]'s constitutional right to Equal Protection under the Fourteenth Amendment, but also violates [MorningStar], and its members['] [] rights to free exercise of religion under the First Amendment of the United States Constitution.

(*Id.* at 76 ¶ 326.) MorningStar also claims that it has "suffered damages in the amount of at least $11,889,000, which is the most recent estimate of the value of the Tower that it has been unable to use as a result of the [C]ounty's actions[;] MorningStar has [also] suffered damages above that amount for its loss in the use of the Tower." (*Id.* at 77 ¶ 329.)

Based on these allegations, MorningStar asserts the following causes of action: (1) "violation of the free exercise clause of the First Amendment of the United States Constitution as to all Defendants" (*id.* at 78–79 ¶¶ 331–35); (2) an "equal protection clause violation . . . of the United States Constitution as to all Defendants" (*id.* at 79–81 ¶¶ 336–41); (3) a "due process clause [] violation of the [Fifth] and [Fourteenth] Amendments [of the] United States Constitution as to all Defendants" (*id.* at 81–83 ¶¶ 342–47); (4) "violation of the South Carolina Religious Freedom Act" (*id.* at 83 ¶¶ 348–49); (5) violations 42 U.S.C. of § 1983 as to Motz and Baker (*id.* at 84 ¶¶ 350–51); (6) violations of 42 U.S.C. § 1985 as to Motz and Baker (*id.* at 84–85 ¶¶ 352–53); (7) injunctive relief as to the County (*id.* at 85–86 ¶¶ 354–55); (8) violation of Article 1, Section 2 of the South Carolina Constitution (*id.* at 86 ¶¶ 356–57); (9) violation of Article 8, Section 17 of the South Carolina Constitution (*id.* at 86–87 ¶¶ 358–59); and (10) declaratory judgment under 28 U.S.C. § 2201 as to all Defendants (*id.* at 87–93 ¶¶ 360–61).

For relief, MorningStar requests "a judgment on the merits of all the causes of action set forth above"; "a restraining order against [the] County to prevent it from continuing to apply a 'default' designation against MorningStar under the . . . Agreement . . . that expired on or about January 12[,] 2013"; "a permanent injunction . . . against [the] County preventing it from taking

any action to destroy the . . . Tower"; "a trial by jury on any and all issues to w[hich] there may be a genuine question of fact"; "monetary damages . . . in an amount to be determined by a jury, for MorningStar's loss of use of [the] Tower as a result of the County's unconstitutional actions"; and attorney's fees and costs. (*Id.* at 93–94.)

On January 11, 2019, Defendants filed a Motion to Dismiss. (ECF No. 15.) In their Memorandum in Support, Defendants argue MorningStar's claims are barred by the statute of limitations, and the doctrine of res judicata applies because this action is duplicative of the prior litigation filed by MorningStar in South Carolina's state courts. (ECF No. 15-1 at 1.) Baker and Motz argue they are also entitled to dismissal because MorningStar has failed to allege facts giving rise to any cognizable claim against either Baker or Motz. (*Id.* at 2.) On February 8, 2019, MorningStar responded in opposition to Defendants' Motion. (ECF No. 24.) In response to Defendants' res judicata argument, MorningStar argues the case before this court is factually and legally distinct from the state court case, namely because it sets forth multiple constitutional claims and is based in equity. (*Id.* at 2.) As to Defendants' statute of limitations defense, MorningStar contends their case is mainly based in equity, and therefore, is not bound by any statute of limitations. (*Id.*) According to MorningStar, under South Carolina law, the statute of limitations is ten (10) years if the action has no defined statute of limitations. (*Id.*) Thus, MorningStar argues a ten-year statute of limitations applies to this case. (*Id.*)

On February 21, 2019, the court held a hearing on Defendants' Motion. (ECF No. 27.) On April 18, 2019, MorningStar moved to amend its Complaint "to add a cause of action for violation of the federal Religious Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc–2000-cc-5." (ECF No. 28 at 1.) In its Proposed First Amended Complaint, MorningStar asserts Defendants violated RLUIPA by "refus[ing] to [g]rant MorningStar a basic, routine, limited

building permit on August 24, 2017." (ECF No. 28-1 at 94 ¶ 363.) MorningStar alleges that it requested this building permit on June 30, 2017, and that "[t]he very maintenance and upkeep of its sacred Tower is considered by MorningStar to be an act of worship, which is protected by the First Amendment of the United States Constitution." (*Id.* at 98 ¶ 378–79.) The County denied MorningStar's request by letter dated August 24, 2017, stating, "[n]o restoration activities are authorized for this building, and in light of the ongoing litigation, the violation of the Planned Development Plan adopted by the . . . Council [o]n January 10, 2005, and the . . . Agreement, the permit application is denied." (*Id.* at 99 ¶ 385; 100–01 ¶ 390.) MorningStar alleges that this denial "has imposed a substantial burden on [MorningStar's] religious exercise in violation of RLUIPA" because the County has not demonstrated that denying the permit furthers a compelling governmental interest using the least restrictive means, and the denial "constitutes discrimination against MorningStar on the basis of religion or religious denomination." (*Id.* at 108–09 ¶¶ 416–18.)

On May 2, 2019, Defendants filed a Response in Opposition to MorningStar's Motion to Amend. (ECF No. 31.) Defendants argue that "[a]s for the new RLUIPA claim, [MorningStar] has failed to state a viable cause of action and this claim (like all of the others) is subject to dismissal pursuant to Rule 12(b)(6) [of the Federal Rules of Civil Procedure]." (*Id.* at 2.) More specifically, Defendants argue "[t]he mere denial of a permit . . . is not a violation of RLUIPA"; "Plaintiff's Amended Complaint fails to identify any ordinance or legal authority that would have entitled Morning[S]tar to receive such a permit in 2017"; MorningStar "has not alleged and cannot show any substantial burden has been imposed on its religious activities"; and "Morning[S]tar has not alleged and cannot prove that any secular property owner under a similar situation (unfinished structure left vacant for 30 years) was treated more favorably." (*Id.* at 8–10.) Thus, Defendants

"request that the court deny the amendment on the basis of futility and that the action be dismissed in its entirety." (*Id.* at 2.)

## II. LEGAL STANDARD

"A motion filed under Rule 12(b)(6) [of the Federal Rules of Civil Procedure] challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "In considering a 12(b)(6) challenge to the sufficiency of a complaint, this Rule must be applied in conjunction with the liberal pleading standard set forth in Federal Rule of Civil Procedure 8(a)." *Jenkins v. Fed. Bureau of Prisons*, C/A No. 3:10-1968-CMC-JRM, 2011 WL 4482074, at *2 (D.S.C. Sept. 26, 2011). Rule 8(a) provides that to be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support their claim and would entitle them to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, a federal district court may dismiss a claim as time-barred under Rule 12(b)(6) "if the time bar is apparent on the face of the complaint." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Leave to amend should be freely given "when justice so requires," *id.*, unless "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile." *Steinburg v. Chesterfield Cty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008) (quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)). *See also Cook v. Howard*, 484 F. App'x 805, 814 (4th Cir. 2012) ("Rule 15(a)(2) articulates a relatively liberal amendment policy, in which leave to amend should be 'freely give[n] when justice so requires.'"). An amendment is considered futile "if the proposed amended complaint fails to satisfy the requirements of the federal rules." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (quoting *United States ex rel. Fowler v. Caremark RX, LLC*, 496 F.3d 730, 740 (7th Cir. 2007)). In other words, a motion to amend should be denied as "futile when the proposed amended complaint fails to state a claim." *Van Leer v. Deutsche Bank Sec., Inc.*, 479 F. App'x 475, 479 (4th Cir. 2012). The "grant or denial of an opportunity to amend is within the discretion of the district court." *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 121 (4th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). *See also* Fed. R. Civ. P. 15 advisory committee's note to 1963 amendment ("Rule 15(d) is intended to give the court broad discretion in allowing a supplemental pleading.").

## III. ANALYSIS

### A. **MorningStar's § 1983 and § 1985 Claims**

MorningStar's Complaint brings "an action for relief and damages pursuant to . . . § 1983, based upon the continuing violation of [MorningStar]'s rights" under the First, Fifth, and Fourteenth Amendments of the United States Constitution. (ECF No. 1 at 2 ¶ 8.) "Section 1983

provides a federal cause of action, but in several respects relevant here federal law looks to the law

of the State in which the cause of action arose. This is so for the length of the statute of limitations:

*It is that which the State provides for personal-injury torts.*" *Wallace v. Kato*, 549 U.S. 384, 387

(2007) (emphasis added).

> In South Carolina, the general statute of limitations for personal injury claims is codified in S.C. Code Ann. § 15–3–530(5), which provides that the statute of limitations is three years for "an action for assault, battery, or any injury to the person or rights of another, not arising on contract and not enumerated by law." This three-year statute of limitations has been held to apply to § 1983 claims in the United States District Court for the District of South Carolina in several cases. *See Ward v. Parole, Prob*[.]*, and Pardon Bd.*, 2007 WL 3377163 (D.S.C. 2007)[;] *Rowe v. Hill*, 2007 WL 1232140 (D.S.C. 2007); *Huffman v. Tuten*, 446 F. Supp. 2d 455 (D.S.C. 2006).

*Ford v. Georgetown Cty. Sch. Dist.*, No. 2:17-CV-01884-DCN, 2018 WL 4680134, at *2 (D.S.C.

Sept. 28, 2018), *aff'd*, No. 18-2260, 2019 WL 1895774 (4th Cir. Apr. 29, 2019). This court holds

the same. Accordingly, since MorningStar's § 1983 claims arose in South Carolina, these claims

are governed by the three-year statute of limitations that applies to personal injury claims under

South Carolina law. *See Wallace*, 549 U.S. at 387; S.C. Code Ann. § 15-3-530(5) (West 2019).

This three-year statute of limitations also applies to MorningStar's § 1985 claim. *See Manion v.

N.C. Med. Bd.*, 693 F. App'x 178, 182 (4th Cir. 2017) ("It is well settled that [§ 1983 and § 1985]

borrow the state's general personal injury limitations period. . . ." (quoting *Jersey Heights

Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999))); *Pastene v. Beaufort Cty.

Sch. Dist.*, No. C.A.9:02 3880 23, 2004 WL 3961191, at *2 (D.S.C. Jan. 28, 2004) ("Actions

brought under § 1981, § 1983, and § 1985 are governed by a three[-]year statute of limitations.").

In a conclusory statement in its Memorandum in Opposition to Defendants' Motion to

Dismiss, MorningStar states that "[n]o statute of limitations applies to the constitutional causes of

action, outside the § 1983 claims, nor does the County attempt to argue that such a statute of

limitations exists on the individually-raised constitutional claims." (ECF No. 24-1 at 26.) As far as the court can surmise, which it is loath to do,[3] MorningStar seems to argue that it has an implied right of action under the First, Fifth, and Fourteenth Amendments, and therefore, MorningStar can sue Defendants for violating its rights under those Amendments without reference to § 1983. However, MorningStar offers no legal authority for its conclusory contention, and in its own Complaint, characterizes this suit as "an action for injunctive relief and damages *pursuant to 42 U[.]S[.]C[.] [§] 1983*, based upon the continuing violation of the plaintiff's rights under U[.]S. Const. amend. I, V, and XIV." (ECF No. 1 at 2 ¶ 8.) Accordingly, the court declines to affirmatively answer this "serious"[4] and "difficult"[5] question, but notes there is Fourth Circuit precedent that would appear to foreclose MorningStar's argument. *See Cale v. City of Covington, Va.*, 586 F.2d 311, 317–18 (4th Cir. 1978) ("On the whole case, as previously indicated, we are of the opinion there is no implied cause of action against the municipality under the Fourteenth Amendment, with jurisdiction under [§] 1331, for the acts of one of its employees. . . . On remand, *Cale should be allowed to proceed with his action under [§] 1983, but not allowed to proceed with it insofar as he claims it is based on an implied cause of action under the Fourteenth Amendment*." (emphasis added)).[6] Therefore, the court concludes MorningStar's constitutional claims are

---

[3] *See Gault v. Thacher*, 367 F. Supp. 3d 469, 486 (D.S.C. 2018) ("In response, Gault merely claims that 'the Agreement did not allow funds to be transferred to other Vaden Entities to the detriment of Vaden of Beaufort and [Gault],' and that 'defendants are given fair notice of this claim.' ECF No. 10 at 21. The court is unimpressed with the lack of arguments by both parties regarding the cause of action and is uninterested in making their arguments for them." (alteration in original)).

[4] *Chaudhry v. Prince George's Cty.*, Md., 626 F. Supp. 448, 455 (D. Md. 1985) ("[T]here is a serious question whether an implied right of action exists directly under the First Amendment whereby plaintiff would be entitled to recover damages and an injunction against defendants . . . .")

[5] *Webster Cty. Lumber Co. v. Wayne*, 61 F. App'x 63, 66 (4th Cir. 2003) ("Leaving aside for the moment the difficult question of whether an implied right of action exists against any entity under the Fourteenth Amendment (a question unaddressed by either party) . . . .")

[6] Moreover, although the United States Supreme Court has "recognized an implied right of action against *federal officers* for violations of the . . . . First Amendment" under *Bivens v. Six Unknown*

asserted via § 1983 and do not arise under a constitutional private right of action.[7]

Additionally, both Defendants and MorningStar argue a different statute of limitations should apply to MorningStar's claims. Defendants argue a two-year statute of limitations should apply to this lawsuit because "MorningStar's claims . . . are essentially tort claims against a governmental entity and its agents," and "the two-year statute of limitations of South Carolina's Tort Claims Act is the most-closely 'analogous state statute of limitations.'" (ECF No. 15-1 at 9.) And, MorningStar argues either that no statute of limitations should apply because this "lawsuit is primarily equitable in nature" and "South Carolina has no statute of limitations for actions in equity" (ECF No. 24-1 at 24, 26 (citing *Dixon v. Dixon*, 608 S.E.2d 849, 855 (S.C. 2005)); or, under § 1983, a ten-year statute of limitations should apply because the most analogous South Carolina statute to this case is the South Carolina Religious Freedom Act," codified at S.C. Code Ann. § 1-32-10–60. (*Id.* at 27.) Both parties maintain the court should apply "'the analogous state statute of limitations' to determine whether claims brought under § 1983 are timely." (ECF No. 15-1 at 9 (citing *Perez v. S.C. Dep't. of Labor, Licensing & Reg.*, 2018 WL 2455093 (slip op.) (D.S.C. June 1, 2018); *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 388 (4th Cir. 2014)).) (*See also* ECF No. 24-1 at 27.)

However, in *Wallace v. Kato*, the United States Supreme Court used the analogous state statute of limitations only because of "the common law's distinctive treatment of the torts of false arrest and false imprisonment." 549 U.S. at 389. The Court determined that "[t]he running of the statute of limitations on false imprisonment is subject to a distinctive rule—dictated, perhaps, by

---

*Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the court is unaware of similar precedent as to *state officials*, who are usually sued under § 1983. *Wood v. Moss*, 572 U.S. 744, 757 (2014) (emphasis added).

[7] The court's conclusion applies to the first, second, third, and fifth causes of action asserted in MorningStar's Complaint. (ECF No. 1 at 78–83, 84 ¶¶ 331–47, 350–51.)

14

the reality that the victim may not be able to sue while he is still imprisoned." *Id.* But, where there is no "refinement to be considered based on the common law's distinctive treatment of the torts," and when "[t]he running of the statute of limitations . . . is [not] subject to a distinctive rule," *id.* at 388, 389, *Wallace* makes clear that the statute of limitations for § 1983 claims "is that which the State provides for personal-injury torts," *id.* at 387. And, the United States Court of Appeals for the Fourth Circuit has held the same in several recent cases. *See DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) ("In cases brought under Section 1983, we apply the statute of limitations for personal injuries of the state in which the alleged violations occurred."); *Tommy Davis Const., Inc. v. Cape Fear Pub. Util. Auth.*, 807 F.3d 62, 66–67 (4th Cir. 2015) ("The statute of limitations for all § 1983 claims is borrowed from the applicable state's statute of limitations for personal-injury actions, even when a plaintiff's particular § 1983 claim does not involve personal injury." (citing *Wilson v. Garcia*, 471 U.S. 261, 275–80 (1985); *Wallace*, 549 U.S. at 387)); *Logar v. W. Virginia Univ. Bd. of Governors*, 493 F. App'x 460, 462 (4th Cir. 2012) ("To determine the applicable statute of limitations for a § 1983 claim, a court must look to the state statute of limitations for personal injury torts."). Accordingly, as the parties do not claim there exists "a refinement to be considered arising from the common law's distinctive treatment" of MorningStar's claims, or that "the running of the statute of limitations [for those claims] is subject to a distinctive rule," in accordance with *Wallace* and Fourth Circuit precedent, the court will apply the three-year statute of limitations that applies to personal injury claims in South Carolina. *See* S.C. Code Ann. § 15-3-530(5) (West 2019).

The court also rejects MorningStar's invitation to apply no statute of limitations based on its contention that this "lawsuit is primarily equitable in nature." (ECF No. 24-1 at 24.) First, although MorningStar's Complaint includes claims for an injunction and a declaratory judgment,

this action is not primarily equitable in nature because MorningStar also requests both a trial by jury and monetary damages, which are indicative of an action at law.[8] *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999) ("[A] § 1983 suit seeking legal relief is an action at law within the meaning of the Seventh Amendment."); *id.* at 710 ("Damages for a constitutional violation are a legal remedy."); *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570 (1990) ("Generally, an action for money damages was "the traditional form of relief offered in the courts of law." (quoting *Curtis v. Loether*, 415 U.S. 189, 196 (1974))); *Keller v. Prince George's Cty.*, 827 F.2d 952, 955–56 (4th Cir. 1987) ("A jury trial is similarly unavailable in a § 1983 action if only equitable relief is sought."). Thus, if anything, both legal and equitable claims coexist in MorningStar's Complaint.

When "legal and equitable claims coexist, equitable remedies will be withheld if an applicable statute of limitations bars the concurrent legal remedy." *In re Minh Vu Hoang*, No. CIV.A. DKC 12-0593, 2014 WL 937949, at *8 (D. Md. Mar. 10, 2014) (quoting *Gilbert v. City of Cambridge*, 932 F.2d 51, 57 (1st Cir. 1991)). *See also Russell v. Democracy Fed. Credit Union*, No. TJS-17-1703, 2019 WL 918887, at *3 n.4 (D. Md. Feb. 25, 2019) ("To prevent plaintiffs from making a mockery of the statute of limitations by the simple expedient of creative labelling—

---

[8] "Actions for declaratory judgments are neither legal nor equitable, and courts have therefore had to look to the kind of action that would have been brought had Congress not provided the declaratory judgment remedy." *In re Lockheed Martin Corp.*, 503 F.3d 351, 359 (4th Cir. 2007) (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 284 (1988)). Moreover, "[t]he United States Court of Appeals for the Fourth Circuit, and many of her sister circuits, have found that claims for declaratory relief are governed by the period of limitations applicable to the substantive claims underlying the action." *Poly-Med, Inc. v. Novus Sci. Pte. Ltd.*, No. 8:15-CV-01964-JMC, 2018 WL 4223443, at *4 (D.S.C. Aug. 27, 2018) (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997); *Gatto v. Meridian Med. Assocs., Inc.*, 882 F.2d 840, 842 (3d Cir. 1989); *Lawrence v. Cooper*, 398 F. App'x 884, 887 n.2 (4th Cir. 2010)). Thus, MorningStar's declaratory judgment claim is governed by the statute of limitations applicable to MorningStar's § 1983 claims.

styling an action as one for declaratory relief rather than for damages—courts must necessarily focus on the substance of an asserted claim as opposed to its form. It is settled, therefore, that where legal and equitable claims coexist, equitable remedies will be withheld if an applicable statute of limitations bars the concurrent legal remedy." (quoting *Gilbert v. City of Cambridge*, 932 F.2d 51, 57–58 (1st Cir. 1991))); *Bishop v. Henry Modell & Co.*, No. 08 CIV. 7541 (NRB), 2009 WL 3762119, at *6 (S.D.N.Y. Nov. 10, 2009) ("[W]here a federal right is at issue, a statute of limitations that would bar a legal remedy (such as damages) also bars a request for equitable relief. The fact that plaintiff seeks equitable relief in addition to monetary damages does not exempt him from the three-year statutes of limitations that govern his claims under §§ 1981, 1982, 1983, and 1985(3), or the one-year limitations period that governs his claim under § 1986."). Therefore, even though MorningStar's Complaint presents both legal and equitable claims, if MorningStar's legal § 1983 and 1985 claims are barred by the statute of limitations, so are its equitable claims.

To resolve whether MorningStar's constitutional claims are procedurally time-barred, the court must first determine when MorningStar's claims accrued. While the statute of limitations for § 1983 and 1985 claims is a matter of state law, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace*, 549 U.S. at 388. *See also Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1162 (4th Cir. 1991) ("While the statutory limitations period for § 1983 actions is borrowed from state law, '[t]he time of accrual of a civil rights action is a question of federal law.'" (quoting *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)) (alteration in original)). "Under federal law, an action accrues when the plaintiff knows or has reason to know of the injury giving rise to the action." *Battle v. Morrison*, No. 97-1637, 1998 WL 116169, at *2 (4th Cir. Mar. 17, 1998). *See also Fayemi v. Offerman*, 99 F. App'x 480,

481 (4th Cir. 2004) ("Under federal law, a cause of action accrues and the statute of limitations commences 'when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action.'" (quoting *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995))).

All of MorningStar's claims are premised upon its discovery of the two emails from Baker and Motz, which MorningStar argues made it aware the County had allegedly been discriminating against MorningStar on the basis of religion. (ECF No. 1 at 51–69 ¶¶ 215–93.) MorningStar's Complaint does not provide a date for discovery of the two emails, but does state it discovered the emails "[a]fter the state lawsuit got underway [during] reciprocal discovery." (*Id.* at 51 ¶ 213).

Defendants assert

> [MorningStar's] claims against Motz and Baker are premised upon documents produced in the State Court Action prior to February 3, 2015. *See* Complaint ¶¶ 213 – 215. Even in its answers to Local Rule 26.01 Interrogatories, Morningstar affirms that it first became aware of Defendants' alleged "constitutional violations . . . during the discovery period of the [State Court Action]." *See* Morningstar Answer to Local Rule 26.01 Int. E (Doc. Entry 5 at 5). In fact, Morning[S]tar sought, unsuccessfully, to introduce evidence of Defendants' alleged "constitutional violations" in the State Court Action. *See* February 3, 2015 Order in State Court Action, at 9 (ROA at 25) ("Morning[S]tar's attempt to introduce Mr. Motz's personal views and emailed comments as evidence of the County's alleged bias is not permitted.").

(ECF No. 15-1 at 10.) As MorningStar has raised no dispute of Defendants' dating of the emails, the court finds that for purposes of determining when MorningStar's § 1983 and 1985 claims accrued, MorningStar discovered the emails prior to February 3, 2015.[9] MorningStar filed suit in

---

[9] Under the Federal Rules of Evidence, the court may take judicial notice of a fact "that is not subject to reasonable dispute" because it is either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2). "The most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.'" *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (quoting 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5106 at 505 (1977)). This includes "tak[ing] notice of proceedings in

this court on November 14, 2018, which is more than three (3) years after its discovery of the emails sent by Baker and Motz.

But, MorningStar contends that it has

alleged a conspiracy that originated with or perhaps even before the Baker and Motz emails, followed by a continuing course of conduct directly related to that conspiracy, being carried on through the present day, as evidenced by the County's arbitrary and inexplicable refusal to lift the artificial 'default' status that has interfered with MorningStar's ability to obtain financing.

(ECF No. 24-1 at 31–32.) MorningStar specifically points to the County's August 24, 2017 "arbitrar[y] deni[al] [of] a basic building permit . . . to do maintenance upon its sacred Tower [] for no legally valid reason." (*Id.*) However, the court finds that under *Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158 (4th Cir. 1991), and *Miller v. King George Cty.*, 277 F. App'x 297 (4th Cir. 2008), the continuing violation exception is inapplicable.

"In general, '[t]o establish a continuing violation . . . the plaintiff must establish that the unconstitutional or illegal act was a . . . fixed and continuing practice.'" *Nat'l Advert.*, 947 F.2d at 1166 (quoting *Perez v. Laredo Junior College*, 706 F.2d 731, 733 (5th Cir. 1983)).

The challenged action must be repeated within the statute of limitations period. As the *Perez* court observed in the context of employment discrimination:

If the discrimination alleged is a single act, the statute begins to run at the time of the act. If, on the other hand, the statutory violation does not occur at a single moment but in a series of separate acts and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation and only those violations preceding the filing of the complaint by the full limitations period are foreclosed.

*Id.* at 733–34 (footnotes omitted).

_____

other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Id.* (quoting *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)). *See also Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 397 (4th Cir. 2006) ("Witthohn marshalls no plausible argument that the state court records should not have been reviewed on a motion to dismiss. A district court may clearly take judicial notice of these public records, and Witthohn does not dispute their authenticity.").

With respect to statutory or regulatory challenges, we have previously found a continuing violation where regulations continued to be applied to persons within the statutory limitations period. *Virginia Hospital Ass'n v. Baliles*, 868 F.2d 653, 663 (4th Cir. 1989), *affirmed*, 496 U.S. 498 . . . (1989). Yet we have found no continuing violation where any harm to the plaintiff stemmed only from the initial application of a regulatory prohibition. *Ocean Acres Ltd. v. Dare County Bd. of Health*, 707 F.2d [103,] 106 [(4th Cir. 1983)].

*Id.* at 1167. In *National Advertising*, the appellant's claimed harm was that a 1983 ordinance passed by the City of Raleigh, North Carolina, "restricted the use of its property without providing just compensation." *See* 947 F.2d at 1167. The Fourth Circuit held there was no continuing violation by the City of Raleigh:

[t]he restriction on use and the economic loss of which National complains occurred upon enactment of the ordinance. No City action since then has added to National's alleged injury or otherwise constituted a taking. Seeking to avoid this conclusion, National points to a January 1989 letter from Raleigh, informing it that its nonconforming signs would have to be removed by April 1989, as a later wrongful act committed by the City within three years of National's suit. This argument misses the mark. The letter was not a new wrongful act, but merely a reminder of the restriction placed on National's signs in 1983. It caused National no additional injury, and is not itself the source of the alleged taking. The fact that National's signs ultimately were required to be removed or brought into conformity by April 1989 was one of the *effects* of their being deemed nonconforming upon enactment of the ordinance, not a separate violation.

*Id.* In *Miller*, applying the factors defined in *National Advertising*, the Fourth Circuit found

there was no continuing violation . . . . [because] the harm to the Millers occurred when they were found in violation of the zoning ordinance in 2001. The additional "violations" cited by the Millers were merely the County's attempts to bring the Millers into compliance and were in large part caused by the Millers' refusal to comply with county and court orders. It was entirely foreseeable to the Millers that their continued failure to conform to the zoning requirements would result in civil and criminal penalties. Once they were cited for a zoning violation, the Millers were in a position to challenge the ordinance in state and federal court. In fact, if any unfairness could occur in this case, it would result from permitting the Millers to challenge the 2001 finding that they were in violation of zoning laws nearly six years after notice of the violation. Accordingly, we find that the continuing violation exception is inapplicable in this case.

*Miller*, 277 F. App'x at 299–300 (footnote omitted). Similarly to *National Advertising* and *Miller*, the County's August 24, 2017 denial of a building permit to MorningStar was not a new wrongful act, but a consequence of the state litigation commenced by MorningStar to challenge the County declaring MorningStar in default of the Agreement, which is the harm alleged by MorningStar. (*See* ECF No. 1 at 48 ¶¶ 202–03 ("That permit request was denied by the County, on or about August 24, 2017[,] using the excuse that the matter was in litigation.")).) As to unfairness, considering MorningStar discovered the Baker and Motz emails, at the latest, in February 2015, but did not commence this federal action until November 2018, the court does not find any unfairness would result from finding the continuing wrong exception inapplicable. *See Nat'l Advert.*, 947 F.2d at 1167. Accordingly, because MorningStar filed this federal § 1983 action on November 14, 2018, which is more than three (3) years after its discovery of the emails by Defendants Baker and Motz, the court concludes all of MorningStar's causes of action under §§ 1983 and 1985 are untimely. MorningStar's §§ 1983 and 1985 causes of action are the first, second, third, fifth and sixth causes of action in the Complaint. (ECF No. 1 at 78–83, 84–85 ¶¶ 331–47, 350–53.)

And, as previously explained, because the court finds MorningStar's § 1983 claims time-barred, so to does it find MorningStar's injunction and declaratory judgment claims, which are the seventh and tenth causes of action in MorningStar's Complaint. *See Poly-Med, Inc. v. Novus Sci. Pte. Ltd.*, No. 8:15-CV-01964-JMC, 2018 WL 4223443, at *4 (D.S.C. Aug. 27, 2018) ("The United States Court of Appeals for the Fourth Circuit, and many of her sister circuits, have found that claims for declaratory relief are governed by the period of limitations applicable to the substantive claims underlying the action." (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997); *Gatto v. Meridian Med. Assocs., Inc.*,

882 F.2d 840, 842 (3d Cir. 1989); *Lawrence v. Cooper*, 398 F. App'x 884, 887 n.2 (4th Cir. 2010))).

## B. **MorningStar's State Law Claims**

As all of MorningStar's federal claims and claims for an injunction and declaratory judgment are time-barred, only three (3) causes of action remain in MorningStar's Complaint: (1) the fourth cause of action, which alleges a violation of the South Carolina Religious Freedom Act, S.C. Code Ann § 1-32-10–60; (2) the eighth cause of action, which alleges a violation of Article I, Section 2 of the South Carolina Constitution; and (3) the ninth cause of action, which alleges violation of Article VIII, Section 17 of the South Carolina Constitution. (ECF No. 1 at 83, 85–86 ¶¶ 348–49, 354–57.) Defendants argue these claims are barred by the doctrine of res judicata.[10] (ECF No. 15-1 at 5–8.) However, the court disagrees and finds res judicata does not bar these claims.

"[A]n affirmative defense such as res judicata may be raised under Rule 12(b)(6) 'only if it clearly appears on the face of the complaint.'" *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (quoting *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). "[W]hen entertaining a motion to dismiss on the ground of *res judicata*, a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact." *Andrews*, 201 F.3d at 524. "Under the doctrine of res judicata, 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" *Id.* at 524 (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). "Generally,

---

[10] Defendants argued all of MorningStar's claims were barred by both res judicata and the statute of limitations. However, as the court interprets the County's Motion to Dismiss, the County did not actually argue that MorningStar's state law claims are barred by the statute of limitations. (*See* ECF No. 15-1 at 8–10.) Accordingly, the court finds that res judicata is the County's only argument for dismissal of MorningStar's state law claims.

the preclusive effect of a judgment rendered in state court is determined by the law of the state in which the judgment was rendered." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008).

In South Carolina,

> [r]es judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties. Under the doctrine of res judicata, "[a] litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit."

*Plum Creek Dev. Co. v. City of Conway*, 512 S.E.2d 106, 109 (S.C. 1999) (quoting *Hilton Head Center of S.C., Inc. v. Public Service Comm'n of S.C.*, 362 S.E.2d 176, 177 (S.C. 1987)). "Res judicata may be applied if (1) the identities of the parties are the same as in the prior litigation, (2) the subject matter is the same as in the prior litigation, and (3) there was a prior adjudication of the issue by a court of competent jurisdiction." *Catawba Indian Nation v. State*, 756 S.E.2d 900, 907 (S.C. 2014).

Regardless of whether the first two (2) elements of res judicata are satisfied, the court finds MorningStar's state law claims are not barred by res judicata because the third element—whether there was a prior adjudication of the issue by a court of competent jurisdiction—is not met. *See Stone v. Roadway Express, Employer*, 627 S.E.2d 695, 697 (S.C. 2006) ("*Res judicata* requires three elements be met . . . ."); *Judy v. Judy*, 677 S.E.2d 213, 218 (S.C. Ct. App. 2009), *aff'd*, 712 S.E.2d 408 (S.C. 2011) ("The circuit court erred in declining to dismiss James's suit for waste on the basis of res judicata because Ronnie satisfied *all three required elements*." (emphasis added)). In its state court complaint, filed in the York County Court of Common Pleas, MorningStar asserted three claims: (1) declaratory judgment, (2) breach of contract, and (3) breach of covenant of good faith and fair dealing. (ECF No. 15-2 at 4–6.) MorningStar claimed the County breached

the Agreement by (1) "failing to [] notify Morning[S]tar . . . when or if the site plan had been approved, as provided in the Agreement," (2) "defaulting Morning[S]tar . . . without grounds or justification," (3) "failing to participate in the mediation process in good faith," and (4) "breaching the implied covenant of good faith and fair dealing inherent in the Agreement." (*Id.* at 5–6.)  As to its declaratory judgment claim, MorningStar requested that the court declare (1) "Morning[St]ar . . . was not obligated to provide [the] County with bid, [payment] and performance bonds before receiving approval of the site plan"; (2) "Morning[S]tar . . . did not default under the Agreement"; (3) "[the] County materially breached the Agreement"; (4) "[the] County's breach of the Agreement occurred at a time when Morning[S]tar . . . had not defaulted under the Agreement"; and (5) "Morning[S]tar . . . has been damaged as a result of [the] County's material breach of the Agreement." (*Id.* at 4–5.)  The York County Court of Common Pleas entered judgment for the County "because Morning[S]tar could not provide evidence of damages . . . . Without the damages element, Morning[S]tar could not state a claim for breach of contract." *Morningstar Fellowship Church v. York Cty.*, No. 2015-002460, 2018 WL 2979771, at *2 (S.C. Ct. App. June 13, 2018). Prior to entering judgment for the County, the York County Court of Common Pleas granted several of the County's Motions in Limine, including one that excluded the email from Motz that is at issue in this case.  (ECF No. 15-4.)  The York County Court of Common Pleas found Motz's alleged bias could not be imputed to the County, and that South Carolina caselaw showed "the personal motivations [of] . . . Motz or any other member of the . . . Council . . . in voting to hold Morning[S]tar in default is not a proper inquiry in this case." (*Id.* at 23–24.)  Finally, the York County Court of Common Pleas granted the County summary judgment as to MorningStar's breach of covenant of good faith and fair dealing claim because "[i]n [South Carolina], there is no

separate cause of action for breach of the covenant of good faith and fair dealing."[11] (*Id.* at 11–12.) Thus, the issue adjudicated by the York County Court Common of Pleas was whether the County breached the Agreement. At issue in the present litigation before this court is not whether MorningStar was required to provide the County with bid, payment, and performance bonds before receiving approval of the site plan, whether the County breached the Agreement, or whether MorningStar was actually in default of the Agreement. At issue in the present litigation is whether the County substantially burdened MorningStar's exercise of religion in violation of the South Carolina Religious Freedom Act and the South Carolina Constitution. (*See* ECF No. 1 at 3, 85–86 ¶¶ 348–49, 354–57.) These issues were not adjudicated in the prior state litigation, and therefore, are not res judicata. *See Stone v. Roadway Express, Employer*, 627 S.E.2d 695, 698 (S.C. 2006) ("Here, the parties are different, and the issue is not the amount of compensation due but rather whether the right to compensation survives Stone's death. *Res judicata* does not bar appellants' statute-based defense to respondent's dependency claim."); *Plott v. Justin Enterprises*, 649 S.E.2d 92, 95 (S.C. Ct. App. 2007) ("Although res judicata may apply even though the plaintiff in the first suit proceeded under a different legal theory, 'where the second suit is upon a different claim, the former judgment is conclusive only as to those issues actually determined.'" (footnote omitted) (quoting *Johnston–Crews Co. v. Folk*, 111 S.E. 15, 19 (S.C. 1922)).

## C. **MorningStar's Motion to Amend**

The court now turns to MorningStar's Motion to Amend. (ECF No. 28.) Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, leave to amend should be freely given "when

---

[11] The South Carolina Court of Appeals affirmed the York County Court of Common Pleas' entry of judgment for the County and exclusion of the Motz email and denied MorningStar's Petition for Rehearing. *See Morningstar Fellowship Church v. York Cty.*, No. 2015-002460, 2018 WL 297977 (S.C. Ct. App. June 13, 2018). (*See also* ECF No. 15-6.)

justice so requires," *id.*, unless "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile." *Steinburg v. Chesterfield Cty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008) (quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)). *See also Cook*, 484 F. App'x at 814 ("Rule 15(a)(2) articulates a relatively liberal amendment policy, in which leave to amend should be 'freely give[n] when justice so requires.'"). A motion to amend should be denied as "futile when the proposed amended complaint fails to state a claim." *Van Leer v. Deutsche Bank Sec., Inc.*, 479 F. App'x 475, 479 (4th Cir. 2012).

MorningStar seeks to amend its Complaint by "add[ing] a cause of action for violation of the federal Religious Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§2000cc–2000-cc-5." (ECF No. 28 at 1.) RLUIPA "contains two provisions limiting governmental regulation of land use with respect to religious exercise." *Andon, LLC v. City of Newport News, Va.*, 813 F.3d 510, 514 (4th Cir. 2016).

> The first such RLUIPA provision prohibits governmental entities from imposing land use restrictions that: (1) treat a religious organization "on less than equal terms" with a nonreligious organization; or (2) discriminate against any organization on the basis of religion. 42 U.S.C. § 2000cc(b)(1), (2).
>
> The second RLUIPA provision addressing governmental regulation of land use, on which the plaintiffs base their claim, does not require a showing of discriminatory governmental conduct. 42 U.S.C. § 2000cc(a)(1); *see Bethel* [*World Outreach Ministries v. Montgomery Cty. Council*]*,* 706 F.3d [548,] 557 [(4th Cir. 2013)]. Instead, this provision prohibits a governmental entity from imposing or implementing a
>
>> land use regulation . . . that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest.
>
> 42 U.S.C. § 2000cc(a)(1).

*Id.*

In its First Amended Complaint, MorningStar asserts both discrimination and substantial burden claims under RLUIPA. (ECF No. 28-1 at 94–109 ¶¶ 362–419.) Defendants argue MorningStar's amendment is futile because "MorningStar purchased the property knowing that the burden it complains of now (i.e. demolishing the Tower) was required," and "the alleged burdens were self-imposed and are not substantial to its religious practices." (ECF No. 31 at 6.) As to MorningStar's RLUIPA discrimination claim, Defendants argue "the proposed amended complaint fails to identify any specific facts that would support a prima facie claim of discrimination," and, more specifically, that "Morningstar has not alleged and cannot prove that any secular property owner under a similar situation . . . was treated more favorably." (*Id.* at 10.)

"To state a RLUIPA claim, [the plaintiff] need only plead facts tending to show a substantial burden on his exercise of sincerely held religious beliefs." *Jehovah v. Clarke*, 798 F.3d 169, 179 (4th Cir. 2015). In its proposed First Amended Complaint, MorningStar asserts Defendants violated RLUIPA by "refus[ing] to [g]rant MorningStar a basic, routine, limited building permit on August 24, 2017." (ECF No. 28-1 at 94 ¶ 363.) The County denied MorningStar's request by letter dated August 24, 2017, stating "[n]o restoration activities are authorized for this building, and in light of the ongoing litigation, the violation of the Planned Development Plan adopted by the . . . Council [o]n January 10, 2005, and the . . . Agreement, the permit application is denied." (*Id.* at 99 ¶ 385; 100–01 ¶ 390.) MorningStar alleges that it requested this building permit on June 30, 2017, and that "[t]he very maintenance and upkeep of its sacred Tower is considered by MorningStar to be an act of worship, which is protected by the First Amendment of the United States Constitution." (*Id.* at 98 ¶¶ 378–79.) MorningStar alleges that this denial "has imposed a substantial burden on [MorningStar's] religious exercise in

violation of RLUIPA" because "[t]he County has not demonstrated that denying the permit furthers a compelling governmental interest using the least restrictive means, and the denial "constitutes discrimination against MorningStar on the basis of religion or religious denomination." (*Id.* at 108–09 ¶¶ 416–18.)

In *Andon*, the Fourth Circuit revisited its decision in *Bethel*, finding that the plaintiff in *Bethel* "presented a triable RLUIPA claim, because the regulations substantially pressured the plaintiff to modify and ultimately to abandon its pre-existing plan to construct a church." 813 F.3d at 515 (citing *Bethel*, 706 F.3d at 556–59). The court reasoned that "although other real property may have been available for the plaintiff to purchase, the 'delay, uncertainty, and expense' of selling the plaintiff's property and finding an alternate location increased the burden imposed on the plaintiff's religious exercise." *Id.* (quoting *Bethel*, 706 F.3d at 557–58). In concluding that the plaintiff in *Bethel* presented a triable RLUIPA claim, the Fourth Circuit "emphasized that a critical function of RLUIPA's substantial burden restriction is to protect a plaintiff's reasonable expectation to use real property for religious purposes." *Id.* Based on this reasoning in *Andon*, the court finds MorningStar has pled facts tending to show a substantial burden on its exercise of sincerely held religious beliefs, as the gravamen of MorningStar's RLUIPA claim is that it cannot use the Tower for religious purposes as a result of the County's denying MorningStar building permits. (*See, e.g.*, ECF No. 28-1 at 95–96, 98–99, 101 ¶¶ 368, 378–381, 393.) Defendants maintain that MorningStar purchased the property knowing the Tower would be destroyed, but accepting the Plaintiff's allegations as true, the potential destruction of the Tower was not in place when MorningStar purchased the property in 2004, as it was a provision in the Agreement executed on January 13, 2008. (*Id.* at 4, 22 ¶¶ 19, 84.) Moreover, MorningStar's RLUIPA claim challenges

the denial of permits to maintain the Tower, not the demolition clause in the Agreement. (*See id.* at 94 ¶ 363.)

The court also finds MorningStar has pled sufficient facts to state a claim for discrimination under RLUIPA. Here, the court is guided by the Fourth Circuit's opinion in *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cty., Md.*, 915 F.3d 256 (4th Cir. 2019), *as amended* (Feb. 25, 2019). In *Jesus Christ Is the Answer Ministries*, the Fourth Circuit held that "[u]nder RLUIPA, a plaintiff need only establish a prima facie claim of religious discrimination, after which the defendant bears the burden of persuasion on all elements of the claim." 915 F.3d at 263. Therefore, "[s]o long as a plaintiff alleges a plausible prima facie claim of discrimination, a court may not dismiss that claim—even if the defendant advances a nondiscriminatory alternative explanation for its decision, and even if that alternative appears more probable." *Id.* In determining whether the plaintiff has alleged a plausible discrimination claim under RLUIPA, the Fourth Circuit found that "RLUIPA's nondiscrimination provision doesn't require a comparison to similarly situated entities." *Id.* The court went on to find that "[t]he Church has alleged that the Board's dismissal of Ware's second petition was motivated by religious discrimination. This allegation is enough to make out a prima facie claim of religious discrimination, provided that the Church can establish discriminatory intent." *Id. See also id.* at 264 ("Accordingly, when we draw reasonable inferences in [p]laintiffs' favor and consider RLUIPA's 'very broad protection for religious liberty,' *Holt v. Hobbs*, . . . 135 S.Ct. 853, 859 . . . (2015), we are convinced that, as alleged, the neighbors displayed the behavior Congress sought to eradicate from zoning decisions.").

Here, MorningStar alleges that the County's August 24, 2017 denial of its request for building permits was motivated by religious discrimination, pointing to the emails of Baker and

Motz.  (*See, e.g.*, ECF No. 28-1 at 96 ¶ 369.)  Contrary to the County's argument, it is not fatal to MorningStar's amendment that it does not "allege[] and cannot prove that any secular property owner under a similar situation . . . was treated more favorably." (ECF No. 31 at 10.)  *See Jesus Christ Is the Answer Ministries*, 915 F.3d at 263 ("RLUIPA's nondiscrimination provision doesn't require a comparison to similarly situated entities.").  Accordingly, accepting MorningStar's allegations as true, considering "RLUIPA's 'very broad protection for religious liberty,'"[12] and mindful of Rule 15(a)'s "liberal amendment policy,"[13] the court, in its discretion, finds MorningStar's amendment is not futile and grants MorningStar's Motion.

## IV. CONCLUSION

The court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss (ECF No. 15.)  Specifically, the court **DISMISSES** all of MorningStar's federal claims, which are its first through third, fifth through seventh, and tenth causes of action, as untimely.  The court **DENIES** Defendants' Motion as to MorningStar's state law claims, which are the fourth, eighth, and ninth causes of actions.  The court also **GRANTS** MorningStar's Motion to Amend.

**IT IS SO ORDERED.**

_J. Michelle Childs_

United States District Judge

June 17, 2019
Columbia, South Carolina

---

[12] *Jesus Christ Is the Answer Ministries*, 915 F.3d at 264 (quoting *Holt*, 135 S.Ct. at 859).
[13] *Cook*, 484 F. App'x at 814 ("Rule 15(a)(2) articulates a relatively liberal amendment policy, in which leave to amend should be 'freely give[n] when justice so requires.'").